## Stuckert Estate

*Aaron S. Swartz, Jr.,* of *High, Swartz, Childs & Roberts,* and *Morgan, Lewis & Bockius,* for petitioners.

HOLLAND, P. J., January 30, 1953.—Petitioners are the two beneficiaries under the will of decedent of her entire estate, which will is about to be offered for probate. They are entitled to her entire estate in equal shares and no other person has any interest whatsoever under the terms of the will. All her real estate is given to her husband, but he predeceased her, and in addition thereto she died seized of no real estate. All her personal estate, which constitutes her entire estate, is left to her two children, petitioners, and her husband, but, her husband having predeceased her, her two children become the sole beneficiaries in equal shares of her entire estate. It would appear, therefore, that they are entitled to administration c. t. a.,

and the petition indicates that they both intend to apply for such letters jointly.

In addition to these facts, the petition states that decedent died November 15, 1952, that William R. Stuckert, the named executor, has renounced his right to act in that capacity, that the estate consists entirely of personal property of an estimated value of $150,-000, that she owned no real estate at the time of her decease, that she was not engaged in business and has no outstanding obligations or indebtedness known to petitioners, that the transfer inheritance tax will amount to approximately $3,000, and the Federal estate tax approximately $18,000.

Paragraph 6 of the petition expresses the fear that the register, according to the usual practice, will require a bond of petitioners as administratrices c. t. a. in double the amount of the estate unless the court gives the relief prayed for.

Paragraph 7 of the petition inferentially argues that since petitioners are the only interested parties in the estate and desire to avoid the amount of an excessive premium on the required bond, it should be made less than double the value of the estate, and the prayer of the petition is that the court fix the bond or, which amounts to the same thing, authorize and direct the register to accept a bond of petitioners when they probate the will and obtain letters of administration c. t. a., with surety that is satisfactory according to the usual rules, in the sum of $25,000, which would appear to be petitioners' calculation of the amount of taxes approximately that will become payable both to the Commonwealth of Pennsylvania and to the United States Government.

Section 321 of the Fiduciaries Act of 1949 requires that the personal representative shall execute and file a bond with sufficient surety in such amount as the *register* considers necessary, having regard to the

value of the personal estate which will come into the control of the personal representative. This language can leave no doubt that in all cases where the personal representative is required to file a bond (see section 323 as to when they are not required to file a bond) it is the register and the register alone who is to determine the amount that is necessary and the sufficiency of the surety. There is nothing in this language from which it can be inferred that it was intended that the court should override the opinion of the register as to the proper amount simply upon his indicating as to what his opinion was likely to be and before he made any official determination of the amount. However, if there were any doubt as to when the court should consider the propriety of the amount of the bond of a personal representative such doubt would be dispelled by a reading of section 324 of the Fiduciaries Act of 1949. That section provides that the court upon cause shown may increase or decrease the amount of an *existing* bond.

Of course, this principle applies not only to the bond of a personal representative, but also to the bonds of other fiduciaries such as trustees and guardians of the estates of minors, which latter classes of bonds are fixed in amount by the court itself. As to trustees' bonds, section 912 of the act, and as to bonds of guardians of minors estates, section 1023 of the act, make the same provisions in identical language as section 324. All refer, however, to an *existing* bond after it has been fixed in amount by the authority constituted in the act to fix it, or authorize the court to require it originally *for cause* shown in cases where it ordinarily is not required for special reasons set out in the act.

Section 321 requires a bond of all personal representatives except as set out in section 323. Under section 324 *for cause shown* the court may require a bond regardless of section 323, or may increase or decrease

the amount of the bond originally fixed by the register in the exercise of his discretion under section 321. In all cases that are not in the exceptions of section 323, the court can only consider an *existing* bond of a personal representative. The theory of this is plain. When letters are applied for, the register and, frequently the applicants themselves, have not sufficient knowledge as to the extent of the assets, to fix the amount of the bond with any degree of accuracy. In the light of subsequent developments, after the administration is begun and it appears the bond is excessive or inadequate, the court has the authority to increase or decrease it. But in the first instance the register has the exclusive authority to fix the amount and pass upon the sufficiency of the surety.

Since this petition requests the court to fix the bond of the administratrices c. t. a. in the first instance, it obviously must be dismissed. At this point, in the consideration of this proceeding, the function of this court is at an end. However, since there appears to be sporadic instances of discontent in regard to bonds of personal representatives, especially administrators, some discussion of the situation that might be helpful to registers of wills might not be inappropriate. Needless to say, this discontent arises from the expense of bond premiums, which adds to the administration expenses.

Section 321 of the act is the successor to former statutes in substantially the same terms, and the practices under it and its predecessors have been the same for years, if not centuries.

Requiring the bond in double the amount of the probable personalty is one of those practices. It is still a reasonable rule of convenience as, at best, it is an uncertain estimate and, as pointed out above, no one, including the applicant for letters, can know accurately what the extent of the assets is at that time.

Nevertheless, the discretion is that of the register as to the amount. It can be argued, as in this case, that the administrators, being the only persons interested, should have the privilege of waiving any surety. This sounds like a convincing argument until it is suddenly realized that it puts the register in a position requiring him to adjudge in every case the identity of the interested parties and the extent of their interests. Wills have varying degrees of complications, so that in cases of administration c. t. a. the register may find himself in a maze of doubt and in a controversial position. The same would be true in cases of intestacy where many heirs in different degrees of relationship to decedent are indicated. This burden should not rest on the register. Rules of procedure must be uniform as to all cases, the obvious ones along with those with complications.

In many cases it could be argued that no surety at all is necessary, and in those cases it might be patently the fact. When the number of delfacations are counted both as to number and also dollar wise, and then compared with the number of cases involving millions of dollars that are honestly administered, a convincing argument could be advanced that no surety should be required in any case. But the legislature has provided otherwise and the application of the law must be uniform as to every case or hopeless confusion will be the result.

This problem of surety bond premiums is akin to the problems as to fiduciaries' compensation and lawyers' fees and equally difficult of exact solution. The application of uniformity squeezes out incidents that have the appearance of inequity. But uniformity we must have, or chaos. As the situation now stands surety bond premiums must be regarded as one of the expenses of administration, the same as court costs, fiduciaries' commissions and lawyers' fees, and will

have to be tolerated until the legislature finds some other better method of security. In the application of all the above-mentioned rules, it is reasonable to suppose, the register will use an admixture of common sense, for which there is no substitute.

And now, January 30, 1953, the petition is dismissed.; costs to be paid out of the estate.